USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/27/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - -x

ALSON ALSTON, :

Plaintiff, :

- against - :

MICROSOFT CORPORATION et al., :

Defendants. :

- - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM DECISION**

08 Civ. 3547 (DC)

**APPEARANCES:**

ALSON ALSTON
Pro Se Plaintiff
2836 W. Girard Ave.
Philadelphia, PA 19130

K & L Gates LLP
By: Rosemary Alito, Esq.
George P. Barbutsuly, Esq.
Attorneys for Defendant Microsoft Corporation
One Newark Center, Tenth Floor
Newark, NJ 07102

**CHIN, District Judge**

Pro Se plaintiff Alson Alston brings this employment discrimination action against defendants Microsoft Corporation ("Microsoft") and ten individual employees of Microsoft. Alston alleges race and disability discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "City HRL"), the New York State Human Rights Law, Executive Law § 290 et seq. (the "State HRL"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq. (the "ADA").

Microsoft moves to dismiss the City and State HRL claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Microsoft argues that these claims are barred because Alston elected his city law administrative remedies. Microsoft also moves to dismiss Alston's Title VII and ADA claims -- except Alston's wrongful termination claim -- for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

For the reasons set forth below, Microsoft's motion to partially dismiss is granted.

**BACKGROUND**

**A. Facts**

For purposes of this motion, the facts alleged in the complaint are assumed to be true.

**1. Employment Overview**

From 1995 to 1999, Alston worked as a Development Lead Programmer for Microsoft Consulting Services ("MCS") in Washington, D.C. (Compl. Ex. 1, ¶¶ 5, 9). He was transferred to Microsoft's Financial Services practice ("FinServ") in New York City in 1999 and worked there until his employment was terminated in 2004. (Id. Pt. II, p. 1). MCS and FinServ are divisions of Microsoft.

---

[1] Alston has requested sanctions against Microsoft for misrepresenting the current state of his appeal with the New York City Commission on Human Rights. (Pl. Aff. Pt. II, p. 5). The request is denied.

**2. Racial Discrimination**

Alston is an African-American male. He alleges that Microsoft "created a hostile work environment for its African-American employees." (Id. at 4).

While employed at MCS, Alston's software designs were published and he received a good performance rating. (Id.). Despite his good performance review Alston was not granted any stock options even though similarly situated white employees received stock options. (Id.).

The pattern of racial discrimination continued at FinServ. (Id. at 4-5). An African American manager told Alston that he wanted to eliminate Alston as competition and destroy his career. (Id. at 4). In late 2000 while Alston was on vacation, this manager e-mailed him an assignment knowing that Alston would not get the email in time to adequately complete the assignment. (Id. at 5). Another manager at FinServ referred to Alston as a "slum lord." (Id.). According to Alston, "[t]his was a racially charged statement because [he] clearly assumed that plaintiff must have lived in or could invest only in a 'slum' or ghetto." (Id.). In addition, a third manager used racially insensitive terms in 2001. (Id.).

Alston was "consistently passed over for promotions in favor of less qualified whites." (Id.). He complained of racial discrimination but his complaints were ignored and he was retaliated against for making them. (Id.).

### 3. Disability Discrimination

Alston suffers from diabetes, hypertension, and adjustment disorder. (Compl. Pt. I, p. 3). He states that "Microsoft engaged in a pattern of unlawful employment practices regarding [his] disabilities." (Id. at 1).

Alston requested medical leave in February 1999, but was denied. (Id. Pt. II, p. 1). He was fired in February 1999 as a direct result of his request for leave. (Id.). Alston then threatened a discrimination suit, which caused Microsoft to reinstate him. (Id.).

In July 1999, following his reinstatement, Alston was denied promotions, salary increases, and bonuses. (Id.). Also in retaliation, Microsoft deleted his name from an article he published, which limited and hindered his career. (Id.). While "similarly situated white developers had always been quickly promoted and given the best assignments . . . [Alston] was given few accolades and not promoted." (Id.).

The disability discrimination continued at FinServ. (Id.). Alston suffered an undefined illness as a result of a heavy workload. His symptoms included "increased anxiety, exhaustion, difficulty concentrating, rapidly rising blood pressure readings and elevated blood sugar readings." (Id.). He was forced to take sick leave from April 15, 2003 to September 15, 2003. (Id.).

Prior to his September 15, 2003 return, Alston requested various accommodations, including a 40-hour work week

(inclusive of travel time), a gradual increase in his work load, adequate time to retool his technical skills, and an opportunity to complete his two performance reviews. (Id. Ex. 1, ¶ 13). Microsoft agreed to the 40-hour work week and removed Alston from work assignments that required high-profile presentations. (Id. at ¶ 14). Microsoft also promised to postpone Alston's mid-year review, but failed to live up to the promise. (Id. at ¶ 17).

Microsoft management retaliated against him by refusing to grant vacation time, increasing his work schedule without giving him time to retool his technical skills, and placing him individually on assignments that required more than one employee to complete. (Id. Pt. II, p. 2). Alston made numerous complaints to Human Resources, but Microsoft did nothing. (Id.). Alston alleges that "for four weeks . . . management team personnel . . . retaliated against [Alston] until he was forced to return to sick leave" in October 2003. (Id.).

**4. Alston's Dismissal**

Alston did not return to work after October 2003. Microsoft reached out to him via letter addressed to his New York home. (Barbatsuly Decl. Ex. A.). The letter gave Alston three options regarding his employment. (Id.). Alston had to either: (1) submit a medical release and return to work; (2) attend two independent medical examinations if Alston or his healthcare provider felt he was medically unable to work; or (3) resign. (Id.). He was to respond with his preferred course of action by April 12, 2004. (Id.).

The letter was delivered via Airborne Express on April 2, 2004 and signed for by Y. Alston, Alston's sister. (Id.). Alston alleges that he lived in Pennsylvania at the time the letter was sent and thus did not receive it in time to respond. (Compl. Pt. II, p. 2). He contends that Microsoft intentionally sent the letter to his New York address when Microsoft knew he had moved to Pennsylvania and had his new address. (Id. at 3). Alston adds, "Microsoft utilized a pretense to terminate plaintiff [that] demonstrates a level of contempt for an employee on disability leave." (Id.).

When it did not receive a response by April 12, 2004, Microsoft attempted to contact Alston by e-mail and telephone. (Barbatsuly Decl. Ex. A.). Alston contends that he did not receive the e-mails in time to respond. (Id. Ex. E.). Microsoft received no response by April 14, 2004. (Id. Ex. A.). On April 15, 2004, Microsoft terminated Alston's employment. (Id.).

**B. Procedural History**

**1. Administrative Hearings**

Alston alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on December 20, 2004. (Compl., Pt. I, p. 3). On February 2, 2005, he filed a claim with the New York City Commission on Human Rights (the "Commission") "authoriz[ing] [the Commission] to accept [the] verified complaint on behalf of the [EEOC]." (Id., Ex. 1). On November 15, 2007, the Commission issued a Determination and Order After Investigation dismissing Alston's complaint in its entirety. (Barbatsuly Decl. Ex. D.). On

November 29, 2007, Alston requested that the Commission vacate its Determination so he could pursue the matter further through the EEOC. (Id., Ex. E.). The Commission has not yet completed its review of Alston's appeal. (Pl. Aff., Pt. II, p. 4). Meanwhile, on January 14, 2008, Alston received an EEOC Dismissal and Notice of Rights. (Compl., Ex. 2).

2. **This Suit**

Alston commenced this action on April 9, 2008. He alleges race and disability discrimination, wrongful termination based on race and disability, retaliation, and a hostile work environment, in violation of the City HRL, the State HRL, Title VII, and the ADA. Microsoft seeks dismissal of Alston's City HRL and State HRL claims and certain of his Title VII and ADA claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**DISCUSSION**

A. **Motion to Dismiss the City HRL and State HRL Claims**

1. **12(b)(1) Standard**

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), courts "need not accept as true contested jurisdictional allegations." Jarvis v. Cardillo, No. 98 Civ. 5793 (RWS), 1999 WL 187205, at *2 (S.D.N.Y. Apr. 6, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits. See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000);

Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).

As the party "seeking to invoke the subject matter jurisdiction of the district court," Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996), the plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in the case, Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Though "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," Guadagno v. Wallack Ader Levithan Assocs., 932 F. Supp. 94, 95 (S.D.N.Y. 1996), a court should "'constru[e] all ambiguities and draw[] all inferences' in a plaintiff's favor." Aurecchione, 426 F.3d at 638 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

In addition, "[d]efects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings." Fox v. Board of Tr. of the State Univ. of New York, 42 F.3d 135, 140 (2d Cir. 1994), cert. denied, 515 U.S. 1169 (1995); see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

**2. City and State HRL**

Section 297(9) of the State HRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate

jurisdiction." N.Y. Exec. Law § 297(9). "'The language of the [City HRL] is nearly identical to that of [the State HRL],' and discussion of the latter applies equally to the former." York v. Ass'n of the Bar of City of New York ("York II"), 286 F.3d 122, 127 (2d Cir. 2002) (quoting and affirming York v. Ass'n of the Bar of City of New York ("York I"), No. 00 Civ. 5961 (DC), 2001 WL 776944, at *5 (S.D.N.Y. July 11, 2001)).

Both laws contain an "election of remedies" provision "that bars 'a person who has filed a complaint . . . with any local commission on human rights' from filing a lawsuit for the same cause of action." York I, 2001 WL 776944, at *14 (quoting N.Y. Exec. Law § 297(9)); see N.Y.C. Admin. Code § 8-502(a); Whidbee v. Garzarelli Food Specialties, 223 F.3d 62, 75 (2d Cir. 2000); Vails v. Police Dep't of the City of New York, 54 F. Supp. 2d 367, 375 (S.D.N.Y. 1999). Once City HRL or State HRL claims are filed with, respectively, the Commission or the N.Y.S. Division of Human Rights (the "Division"), those claims or claims based on the same incidents may not be brought again in another court. See York II, 286 F.3d at 127; see also Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 882 (1995).

There are two exceptions to the election of remedies doctrine: (1) a complaint filed with the Commission or Division dismissed for administrative convenience, N.Y. Exec. Law § 297(9); Whidbee, 223 F.3d at 75; Pugh v. Mem'l Sloan Kettering Cancer Ctr., No. 97 Civ. 8594 (DAB), 1998 WL 158764 (S.D.N.Y. April 6, 1998); and (2) a complaint filed with the Commission or Division by the EEOC pursuant to the Title VII requirement that

all complaints filed directly with the EEOC be referred to the local agency (for duty-sharing purposes). See N.Y. Exec. Law § 297(9) (citing 42 U.S.C. § 2000e-5(c)); see also Morelli v. Cedel, No. 96 Civ. 2874 (MBM), 1997 WL 61499, at *7 (S.D.N.Y. Feb. 13, 1997), vacated in part on other grounds, 141 F.3d 39 (2d Cir. 1998). When a plaintiff files a complaint with the Commission or Division, no City or State HRL claims arising from the same facts can be adjudicated in federal court, unless one of the exceptions applies. Smith v. City of New York, No. 03 Civ. 1252 (NRB), 2008 WL 1970316, at *9 (S.D.N.Y. May 6, 2008); see McNulty v. New York City Dep't of Fin., 45 F. Supp. 2d 296, 303 (S.D.N.Y. 1999) (holding that plaintiff is foreclosed from bringing City or State HRL claims in federal court after electing to pursue a claim with the Division).

### 3. Application

Microsoft argues that Alston's election of administrative remedies bars his City and State HRL claims in this Court. For the reasons below, I agree.

The administrative remedies provided by N.Y. Exec. Law § 297(9) and the remedies available in this Court are mutually exclusive. Once a claimant elects the administrative forum by filing a complaint with the Commission on Human Rights, that becomes the sole avenue of relief. Subsequent judicial action arising from the same complaint or based on the same incident or cause of action is barred, unless one of the two exceptions applies.

While it is clear that the first exception does not apply to this case, whether the case falls under the second exception is less clear. Alston asserts in conclusory fashion that he filed with the EEOC on December 20, 2004 and also on February 2, 2005. (Compl., Pt. I, p. 3). He has not provided a copy of what he purportedly filed with the EEOC. The only EEOC document in the record is the Dismissal and Notice of Rights, which actually bears a 2005 docket number, 16F-2005-00045. (Id., Ex. 2). The docket number suggests Alston's charge was filed in 2005, not in 2004.

The Court concludes that Alston filed with the Commission first for several reasons. First, in his verified complaint filed with the Commission, Alston authorizes the Commission to accept the verified complaint on behalf of the EEOC. His authorization suggests that he filed with the Commission first, asking it to accept the charge for the EEOC, as well. Second, in his Opposition, Alston does not allege that he filed with the EEOC first. To the contrary, he suggests he filed with the Commission and then filed with the EEOC "even though the [Commission] matter was still on appeal." (Pl. Aff., Pt. I, p. 5). Third, Microsoft contends it is "unaware of any direct EEOC filing by Plaintiff on either [December 20, 2004 or February 2, 2005]." (Def. Mem., p. 5). Fourth, the EEOC Dismissal and Notice of Rights bears a 2005 docket number. Accordingly, based on all of the documentation, the Court finds that Alston filed with the Commission first and the Commission accepted his complaint for itself and the EEOC. Under these circumstances, the case does not fall under the second exception.

Thus, the City and State HRL claims are dismissed for lack of subject matter jurisdiction.

**B. Motion to Dismiss Title VII and ADA Claims In Part**

**1. 12(b)(6) Standard**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept plaintiff's factual allegations as true and draw all reasonable inferences in its favor. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). The Court may only consider the allegations in the complaint and any documents either attached as exhibits to the complaint or incorporated into the complaint by reference. Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

To survive a motion to dismiss, a plaintiff's claim must be "plausible." See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). Under the plausibility standard, a district court's inquiry focuses on whether the complaint pleads "'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1974).

Furthermore, "a defendant may raise the affirmative defense in a pre-answer motion to dismiss" when a statute of limitations bars an action based on the dates in a complaint. Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." (Id.).

2. **Title VII and ADA Time Restrictions**

In New York State, Title VII and the ADA require a plaintiff to file an administrative charge of discrimination with the EEOC no more than 300 days after the alleged discriminatory act to maintain an action in federal court. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

3. **Discrete Acts and Hostile Work Environment**

Title VII and ADA time restrictions apply to each discrete act of alleged discrimination. Discrete acts of discrimination include "termination, failure to promote, denial of transfer, or refusal to hire," as well as disciplinary actions such as suspensions and the denial of training." Morgan, 536 U.S. at 114. In Morgan, the Supreme Court held that "[d]iscrete discriminatory acts are not actionable if time barred." Id.

Title VII and ADA time restrictions also apply to hostile work environment claims. A hostile work environment is "comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at 117. At least one act contributing to the alleged hostile work environment must fall within the limitations period. Id. Title VII claims not raised previously, however, must be reasonably related to the original claims made with the EEOC. See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401, 1402-03 (2d Cir. 1993) (noting that "this exhaustion requirement is an essential element of Title VII's statutory scheme").

The Court must look at all the circumstances to determine whether a hostile or abusive work environment exists.

> These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance . . . . [N]o single factor is required.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Furthermore, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." Harris, 510 U.S. at 21.

**4. Application**

Alston alleges that he suffered discrimination based on race and disability while employed at Microsoft and that this discrimination created a hostile work environment. Microsoft argues that the claims should be dismissed because they are time-barred. I conclude that all of the alleged discrete acts except for Alston's discharge are time-barred. I also conclude that Alston's discharge is a discrete act and cannot be considered, in the circumstances here, part of the hostile work environment claim.

**a. Alston's Time Restrictions**

Alston states that he first filed his administrative charge of discrimination on December 20, 2004. (Compl. Pt I, p. 3). Accordingly, even assuming that date is correct, the limitations period commenced 300 days earlier, on February 24, 2004. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a). Allegations of discrete acts that occurred before February 24, 2004 are time-

barred. See Morgan, 536 U.S. at 114. Hostile work environment claims, however, because of their continuous nature, are not time-barred as long as one act occurs within the 300 days between February 24 and December 20, 2004. Id. at 117.

**b. Discrete Acts**

Alston admits that he was the victim of what "appear to be discrete, independent events" from 1999 to 2004. (Compl., Pt. II, p. 2). Discrete acts include failure to promote, denial of transfer, and termination of employment. See Morgan, 536 U.S. at 114. Because the 300-day time restriction applies to each discrete act, I cannot consider any discrete discriminatory acts that took place before February 24, 2004. Id. Except for Alston's employment termination, all of the alleged discriminatory acts occurred prior to February 24, 2004. Accordingly, the earlier discrete acts are time-barred.

**c. Hostile Work Environment**

Alston also contends that the same discrete acts "clearly paint a picture of a hostile work environment" that continued from 1999 to 2004. (Compl., Pt. II, p. 6). If Alston's employment termination could be considered part of a series of continuous acts comprising a hostile work environment, then the alleged acts dating back to 1999 would not be time-barred. See Morgan, 536 U.S. at 114. There is a lack of continuity, however, between the alleged acts of hostility at work and the termination of his employment. Alston had been on leave for many months when Microsoft terminated his employment. In addition, Alston's complaint fails to identify any "alleged discriminatory acts that continued until, or occurred at the time

of, the actual termination of his employment." Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) (holding that employee could not use termination that fell within the limitations period to pull in time-barred discriminatory act). Thus, Alston's hostile work environment claim is time-barred.

Accordingly, defendant's motion to partially dismiss Alston's Title VII and ADA claims is granted.

**CONCLUSION**

For the foregoing reasons, Microsoft's motion to partially dismiss is granted. Alston's wrongful termination claim survives, but only as to Microsoft.[2] All discovery -- fact and expert -- shall be completed by August 14, 2009. Any party wishing to move for summary judgment must do so by September 18, 2009. Opposition papers shall be filed by October 16, 2009. Reply papers shall be filed by October 30, 2009.

SO ORDERED.

Dated: New York, New York
April 27, 2009

DENNY CHIN
United States District Judge

---

[2] The claims against the individual defendants are dismissed. The City and State HRL claims are dismissed due to Alston's election of remedies. The Title VII and ADA claims against the individual defendants are dismissed because "individuals are not subject to liability under Title VII" or the ADA. Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)). The complaint is dismissed as to the following defendants: Albert Kim, Teresa Ulus, Jim Cox, Walter Patrick, Bob Tedesco, Dennie Beach, Nancy Horwitz, Jeffrey Moore, Paul Nasto, and Allison Watson.